Filed 7/21/25  In re M.M. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.M., Person Coming Under the Juvenile Court Law. | B342197 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.M.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 21CCJP03827 |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

J.M. (mother) appeals an order terminating her parental rights with respect to her youngest child, M.M.  Her sole contention is that reversal is required because the juvenile court and the Department of Children and Family Services (Department) failed to comply with the initial inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  We reject this argument and affirm the order.

## DISCUSSION[1]

### I.      Governing Principles and Standard of Review

"ICWA[2] reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881, disapproved of on other grounds by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)  In general, both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age

---

[1]      We resolve this case by memorandum opinion (Cal. Stds. Jud. Admin., § 8.1.) and limit our discussion of the facts to those needed to resolve the issue presented on appeal.  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of juvenile court's decision "does not merit extensive factual or legal statement" (fn. omitted)].)

[2]      The Legislature incorporated ICWA's requirements into California law in 2006.  (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code,[3] § 224.1, subd. (b)(1).)

The juvenile court and the Department have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. (See *In re J.C.* (2022) 77 Cal.App.5th 70, 77–78.) The phase at issue here is the initial duty to inquire.

The Department's duty of inquiry "begins . . . when [it is] first contacted regarding a child . . . and upon . . . [its] first contact with the child or the child's family, including extended family members . . . ." (§ 224.2, subd. (b)(1).) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (*Id.*, subd. (b)(2).) For purposes of section 224.2, and subject to an exception inapplicable here, section 224.1, subdivision (c)(1) defines " '[e]xtended family member' " as "a person who has reached 18 years of age and who is the . . . child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."

"Despite its broad terms, section 224.2, subdivision (b) does not require inquiry with every adult living extended family

---

[3] All undesignated statutory references are to the Welfare and Institutions Code.

3

member." (*In re H.B.* (2023) 92 Cal.App.5th 711, 720 (*H.B.*).) The statute "is not intended to obligate county welfare departments to search for possible Indian ancestry without regard to cost or other considerations. Rather, it is intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work.'" (*Ibid.*) Consequently, in reviewing the adequacy an ICWA inquiry, "the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the agency's . . . inquiry has yielded reliable information about a child's possible tribal affiliation." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009 (*Ezequiel G.*), disapproved on other grounds by *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.[4]) Reversal is therefore not "require[d] . . . in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*Dezi C.*, at p. 1140.)

We review the trial court's ICWA's findings "under a hybrid substantial evidence/abuse of discretion standard, reviewing for substantial evidence whether there is reason to know a child is an Indian child, and for abuse of discretion a juvenile court's finding that an agency exercised due diligence and conducted a 'proper and adequate' ICWA inquiry." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 995−996.)

---

[4]   In her reply brief, mother relies on *Dezi C.*, *supra*, 16 Cal.5th 1112, to challenge the sufficiency of the Department's inquiry. *Dezi C.* is inapposite. There, the parties agreed that the Department's inquiry was inadequate. (*Dezi C.*, at p. 1141.) Our Supreme Court therefore declined to treat that case as an "occasion to decide what constitutes an adequate and proper inquiry necessary to satisfy section 224.2." (*Ibid.*)

## II.    Analysis

While investigating M.M.'s potential Indian ancestry through his maternal lineage,[5] the Department asked mother multiple times whether she had any Indian ancestry. Each time—and consistent with her ICWA-020 form—mother denied having such ancestry. Further, when interviewed by the Department in June 2023, mother related that M.M.'s maternal great-grandmother was deceased, that she had never met any of her maternal aunts, and that she did not have those aunts' contact information.

The Department took steps to speak with four extended maternal relatives about M.M.'s possible Indian ancestry. In June 2023, the Department successfully contacted M.M.'s maternal cousin, A.B., with whom M.M. was placed from April 3 to June 30, 2023. A.B. "stated she does not have any knowledge or belief that her family has any . . . Indian ancestry" and suggested that the Department follow-up with her father, D.B. The Department then spoke with D.B., who denied having Indian ancestry. It also tried to contact mother's half-siblings, L.D. and S.G., by phone and by text message, but could not reach them.

Despite these efforts, mother maintains that the Department did not conduct an adequate inquiry into M.M.'s possible Indian ancestry, as it did not interview M.M.'s maternal

---

[5]    Mother does not dispute the adequacy of the Department's efforts to ascertain whether M.M. had any Indian ancestry through his paternal lineage.

grandmother, L.B., or his maternal cousin, J.B.[6]  For the reasons discussed below, we disagree.

The record only references maternal grandmother L.B. in two contexts.  First, it states that in November 2007, the Department received a referral alleging one of mother's other children was at risk of abuse because maternal grandmother's companion had assaulted mother, causing injuries requiring emergency room treatment.  Second, the record shows that, when asked about her social history, mother reported moving with her parents from Pasadena, California, to Seattle, Washington, when she was two years old.  Maternal grandmother eventually left maternal grandfather, as he was abusive toward her.  Mother remained in maternal grandfather's care until, due to his abuse, she ran away to live with maternal grandmother.

Neither mother nor any of M.M.'s other maternal relatives involved in this dependency case indicated that they or any other family members were in contact with maternal grandmother while the case was open.[7]  Nor did they provide the Department with maternal grandmother's contact information.  Under these circumstances, the Department was not required to interview maternal grandmother to satisfy its duty of inquiry.  While the Department should "follow up on leads provided by the parents[ ]" and other relatives with whom it is in contact, it cannot be "aske[d] . . . to interview individuals for whom no

_____

[6]      While not entirely clear, the record appears to reflect that J.B. is M.M.'s maternal cousin, rather than his maternal second cousin.

[7]      Although not definitive, there is some evidence suggesting that maternal grandmother may have been deceased when this case arose in August 2021.

6

contact information has been provided." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.) "Requiring the Department to track down information about extended family members beyond that offered by participants in the proceedings would impose an undue burden on the Department and necessarily reduce the resources it has to otherwise protect the welfare of dependent children." (*H.B.*, *supra*, 92 Cal.App.5th at p. 720.)[8]

We acknowledge that, unlike maternal grandmother, the Department had contact with maternal cousin J.B. twice in February 2024. Nonetheless, we discern no error in its failure to interview her as part of its ICWA inquiry.

The parties do not dispute that J.B. and maternal cousin A.B. are siblings who share maternal uncle D.B. as their father. As noted above, the Department interviewed A.B., who stated that her family did not have Indian ancestry, and recommended that the Department follow-up with her father—not her sibling— for more information. D.B. also denied having Indian ancestry. The record does not reflect that J.B. may have known more about the family's ancestry than her sibling or father did.

Accordingly, on the record before us, we are not persuaded that the Department would have obtained from J.B. additional, reliable information regarding M.M.'s potential Indian ancestry. (See *In re Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009; see also *H.B.*, *supra*, 92 Cal.App.5th at p. 721.) We thus reject mother's assertion that the Department's inquiry was deficient because it did not ask J.B. about M.M.'s Indian ancestry.

We conclude the juvenile court did not abuse its discretion by finding the Department's efforts were adequate to discharge

---

[8]     In light of our conclusion on this issue, the Department's motion to submit additional evidence on appeal is denied.

its duty of initial inquiry, and that reversal is not required based on its failure to interview maternal grandmother or maternal cousin J.B.

## DISPOSITION

The November 19, 2024 order terminating parental rights is affirmed.

TAMZARIAN, J.

We concur:

ZUKIN, P.J.

COLLINS, J.